If it please the court, counsel, actually, appellant has nothing to add to his briefs he's filed. We would like to note that during the nine years of his employment, he was an exemplary employee and only became targeted after the defendant Gator became his supervisor and that targeting continued until he was terminated the following year in November of 08, after being falsely accused of circulating a letter critical of Tenderloin, defendant Tenderloin, and being falsely charged with verbal abuse, et cetera. Although he never committed anything that violated any of Tenderloin's rules and continued to do his job, he was terminated, not given, really given an opportunity to defend against the charges brought against him. As a matter of fact, defendant Shah refused to even meet with him and his attorney. And ultimately, he was, in fact, terminated as wrongfully for all the reasons we've alleged. And fortunately, several of his coworkers provided support and declarations of support, all of his claims. And, in fact, Union Representative Goldman, in her declaration, made clear that the actions taken against appellant were certainly contrary to Tenderloin's practices and rules, but contrary to any kind of notion of fairness. And, in fact, no progressive discipline activity was ever placed so that if Plaintiff Appellant had, in fact, been engaging in conduct that was wrongful to jeopardize his employment, he would have had an opportunity to correct it, but was not given that opportunity and was so. Okay. Mr. Oler, I have one question that you have not yet touched on, and that is, I'm a little puzzled as to how to make sure I got my hands on the factual narrative as to what the union did or did not do in pursuit of his grievance with respect to his termination. I understand there was an earlier grievance. The union representative, that was settled and so on. I'm not interested in that one. What I'm interested in is the grievance with respect to his termination. The union proceeded to a certain point, and then things stalled. Could you just lead me factually through that narrative? What happened? Your Honor, I've got a very serious problem here. My hearing aids, I can't catch them. My hearing aids are not working. Acoustics are a problem. I haven't been in this court for several, several years. I confess the acoustics are terrible. I can't hear you, Your Honor. Perhaps your assistant heard me. Could you help with the ñ what I'm interested in is tell me what happened after he went to the union asking for grievance with respect to his termination. He wants to know what happened with the union with respect to the termination, the grievance. In connection with that, Your Honor, at initiative the union indicated that it would take the matter to arbitration, but then shortly thereafter declined to do so, and then subsequently this action was filed. At what point, if any, did he say to the union, I'm not interested in pursuing this grievance further, I would rather litigate? At what point did he say to the union he was not interested in pursuing the grievance he would rather litigate it? At no point did he ñ I'm sorry. At no point did he indicate to the union that he would not pursue the grievance. In fact, he implored it to continue with the grievance and take it to arbitration. It was never taken to arbitration. Okay. And I'll hear from the other side. I know that in his deposition he said ñ and the question asked to him in his deposition was, would I understand correctly that at this date, that is to say the date of the deposition, you no longer have a wish or intention to proceed with arbitration and want instead to proceed with a lawsuit? He answered, I'd rather proceed with a lawsuit and put everything on the table. So there does come a point at which he says, I'd rather proceed with a lawsuit, I'm not interested in arbitration. But I'm wondering at what point he decided that. At what point did he decide that he was not interested in arbitration, that he would continue on with the lawsuit? Do you know? I don't think at any point he indicated that he was not interested in arbitration. The ñ shortly after the ñ he was informed and the union indicated that it would not take the matter to arbitration, he had no alternative but to initiate this litigation against both Tenderloin and the union. Okay. Thank you. You'll conserve the rest of your time? I'll reserve the remainder of my time with the Commissioner of the Court. Thank you. Good morning, Your Honors. Judge Gould, Matt McFarland for the employer defendants, Tenderloin Housing Clinic, Shaw and Gaeta. The employer defendants have tried to address in a comprehensive manner all of the issues raised by this appeal and the underlying second amended complaint. There are a lot of moving parts over the course of this employment. It's not always clear what evidence has been presented in order to support the appeal, but hopefully not to a fault. The brief tried to address everything. Briefly addressing the issues that were raised by Mr. Oler today, to the extent that plaintiff's position is that Gaeta, as his supervisor, somehow discriminated against him or retaliated against him, I would like to point out to the Court that the record shows Gaeta was his supervisor for a very brief period of time, from September of 2007 through December of 2007. And at which point he was transferred pursuant to the settlement of the grievance? Correct. He was transferred initially in January after negotiations. There is documentation showing that transfer, which led to the April 2008 settlement agreement, which kind of memorialized the transfer. Gaeta did not have any direct contact with him following that transfer. She was not his supervisor after December 2007. He was terminated in November of 2008. So it was virtually 14 months later. I should have said this. I assume you and the union are splitting the argument. Oh, yes. I'm sorry. I'm going to reserve time for the union. Based on your question, I will reserve more than half of the time for the union. Okay. I've got to make sure I do want to ask the union the question that I asked Mr. Oler. Okay. And just briefly, there's really no dispute here regarding the incidents in this 10-day period in October of 2008 that led to the termination, the outburst in the administrative offices, also the circulation of the false and defamatory petition, followed by disturbing the employees at their work sites. If you're looking at the administrative record from – I'm sorry, the supplemental excerpt of record from about 187 through 197 during Mr. Holmes' deposition, he confirms that he engaged in all of that activity. With respect to his not being given a chance to respond to the charges against him, that's just simply not true. There were three pre-termination investigation hearings. He refused to make a statement. There was a post-termination hearing pursuant to the union contract where he also refused to make a statement, even though he had shop stewards, union representatives present at each of these investigation hearings. So to the extent that there is this argument that he wasn't given a chance to plead his case, that's quite simply not supported by the record. Kagan. And so forgive me for interrupting. I want to make sure that I understand the facts correctly. And you just made a statement that he doesn't dispute engaging in these activities that you mentioned, and one of them is circulating the petition. And I – unless I'm talking or thinking about a different petition, my recollection is that he – his position is that he didn't draft it, but he circulated it, is that right? Is that the petition with the union logo on it and that was it? That's correct. There was a flyer against Gaeta back when she was his supervisor, 14 months before his termination. And then there was the petition against Shaw. Oh, forgive me. Okay. Which accused Shaw of anti-union activities. And – and Holmes did claim that he did not draft it. He said he found it in his mailbox one day. He circulated it among coworkers. The union has discredited it. They have said that it wasn't an official union communication. But you said he doesn't dispute – you're referring to just circulating it. Circulating it. I'm not talking about actually drafting it. He does dispute drafting it. If the Court doesn't have any more questions, I will turn it over to the union attorney. Thank you. May it please the Court, my name is Carrie Ann Steele and I'm appearing on behalf of Defendant Service Employees International Union Local 1021.  And I think it's notable that Mr. Oler was not referencing the union at all. And that's been consistent with how the plaintiff has litigated his case, that the union has really been not a source of the plaintiff's focus. And the district court judge at the lower level found that there hasn't been any wrongdoing by the union whatsoever. Well, the district court found there no wrongdoing by either of the two defendants. That's why we're on appeal. Indeed. Now, to directly answer your question, the grievance relating to the termination was timely filed. It was pursued to mediation. Initially, the employer said it was not interested in participating in mediation. Thereafter, the employer said it would engage in final and binding arbitration, which is the culminating step of the grievance and arbitration procedure in the collective bargaining agreement. The union did, in fact, move the grievance to arbitration. It moved it, in fact, to the union's attorney's office, my office, and the first step is to open a file, send a letter to the Federal Mediation and Conciliation Service asking for a list of arbitrators. The employer and the union strike from that list alternately to be able to determine who is the most mutually acceptable arbitrator to use. Then Mr. Holmes stated in his deposition that he spoke with the union representative Das Lamparas and that Das Lamparas did, in fact, confirm to him that the union has moved the grievance to arbitration. In Mr. Holmes's declaration, he says that thereafter, after there was some passage of time, he spoke with an unnamed individual at the union hall who's a longtime member of the union. That unnamed individual, he attests in his declaration, said something to the effect of, if the union has not yet moved your case to arbitration, it's not going to happen. We have no idea who that hearsay declarant is. Scalia. But keep going. It doesn't go to arbitration. Why not? We don't know what the state of mind was of the hearsay declarant, but it was apparently a comment about if there's a passage of time. No, no, no. I'm not interested in the hearsay. You know what happened, and I'm trying to figure it out. It didn't go to arbitration. Give me the events properly in the record, because it seems to me that the union, under the circumstance, may well have had a duty to pursue it to arbitration, and at some point it doesn't happen. The union did not have such a duty, Your Honor, and this is why. When the union contacted the employer to select arbitrators, at that point, Mr. Holmes had filed his lawsuit, and the employer said something to the effect of being uncomfortable with proceeding with the arbitration because there's the pending lawsuit. Employers are very often uncomfortable.  So, I mean, I'm not going to argue with that. And the most important fact is one that you already mentioned, Your Honor, which is then, as the lawsuit's going on, the deposing attorney at Mr. Holmes' deposition on behalf of the union said point blank, are you interested in pursuing the arbitration or would you rather proceed with litigation? And the passage you quoted was that Mr. Holmes said in his own words, I would rather proceed with the lawsuit, I want to put it all out on the table, meaning in this forum, through the form of litigation. Sotomayor No, I get that, too, but at what – give me the time sequence. Okay, the employer comes back and says, I don't want to designate an arbitrator because of the filing of the lawsuit. Okay, so the employer is stalling. The lawsuit goes forward, and what's the union do? Nothing? The union at that point was a defendant in the lawsuit, but was continuing to pursue the grievance. The grievance was live. We made a timely demand to arbitrate, having preserved the grievance, and then very shortly thereafter was the deposition of the plaintiff, at which point he said – Very shortly thereafter. Give me the dates. I believe we're – the lawsuit was filed on December 9th, 2009, originally. December 9th, okay. Counsel, can you back up a little bit in the time frame for me, because my recollection – I mean, we have a lot of oral arguments this week, so I'm happy to stand corrected, but my recollection notes indicate that there was quite a delay, I think over a year, between the time that the appellant indicated that he wanted to arbitrate his termination and the time that the union actually asked for arbitrators. Have I got that wrong? And in the meantime, he'd sued them. There is often a delay of time. I don't remember the precise delay, and so I'm unable to report that at this time. There's often a delay, and it's attributable to a number of things. There are multiple steps in a grievance procedure. In this case, there's even the step of mediation. Then it takes a while for us to contact a mediation service and to select arbitrators off of a list, then even to schedule an arbitration hearing. So it's common for things to go on for a while. What is important for your consideration is the fact that the union unequivocally expressed its intention to proceed with the arbitration. That was in the form of both moving the grievance to arbitration, Dozlan-Parras and confirming verbally with Mr. Holmes that it was being moved. The union's attorney is making a request for a list of arbitrators, and at the time of Mr. Holmes' deposition, the arbitration was still pending. It was still valid, and yet Mr. Holmes himself said he was not interested in a moment. Did Mr. Holmes ever communicate directly with the union to say, please don't proceed with it? Yes, in the form of saying that message to the union's attorneys in the deposition. No, no, I'm asking a different question. Other than the deposition, did he ever say, listen, don't go forward? No, that's not in the record. But it was in the form of the deposition. On the record, it doesn't exist, or it's just not on the record? I do not believe that Mr. Holmes otherwise indicated that he did not want to go forward with the arbitration, but he did say so at the deposition. And the deposition, the question and answer I read out, that's questioning by the union lawyer? That's right. Now, the standard applicable here to the union is whether there's been a breach of the duty of fair representation, whether there's been discrimination, bad faith, arbitrary conduct, none of this is proven. The district court judge was right in concluding that the union represented Mr. Holmes well in the earlier stages. You said you did not want to get into those earlier grievances, but even throughout. By pushing the grievance to arbitration when it believed that the question of the merits of the grievance, it was unclear whether or not the union would win. Notwithstanding that, it did pursue the grievance to arbitration until the point that Mr. Holmes himself said he's no longer interested. Now, if there was a point in time, and there was, that the employer said it was uncomfortable proceeding to arbitration, we're unaware of there being any case law that requires a union to file a petition to compel arbitration. Mr. Holmes never asked for that, and there's no case law that would obligate that. And again, it's the individual who would benefit from the grievance who said he's no longer interested in it going forward. And at that point, any duty of fair or unfair representation is unclear. But at the point at which he says I'm not interested, earlier on the same page of the deposition, he says I'm not interested because, I'm paraphrasing, in his view the union is no longer interested in arbitration. He doesn't trust the union anymore. I don't think he said it quite like that, Your Honor. Do you want me to just read it? I can. If you think it's necessary, Your Honor, but I think that the record does not suggest that. I think he was impatient with the debate. Question. I'm on page 559. You say you don't have confidence in the NLIB process. Do you also lack confidence in the arbitration process under the union contract at this point? Yes, I do. Do you believe that the arbitration process under the union contract would provide you a fair hearing or resolution of your termination claim? I honestly believe that for some reason or another they'll try to find some type of way to find out in the wrong. You don't trust the process? No, I do not. And it's because of past experiences with them. I tried this union out. The first thing they come up with is my charge is past due, it's limitation. Now, all of a sudden, if you want to represent, how can you have faith in someone like that that totally neglects you? That's all. I think I paraphrased that correctly. He says, I don't trust this union anymore. Your Honor, the complaint does not encompass a failure after the deposition  But instead of the union to pursue the arbitration, the union to pursue the arbitration is a failure. But, counsel, that's why I was asking about the earlier segment and about the deposition mention of them neglecting him. That's why I was asking about the yearlong delay to move it to arbitration to request a list of arbitrators. The union gave Mr. Holmes regular assurances that the matter was proceeding to arbitration. And, for example, in the conversation between Dazlan Paras and Nathaniel Holmes, that was clear. The fact that a hearsay declarant who claims to have some familiarity with the process made some remark about, oh, if it hasn't happened yet, don't count on it happening, that's not probative here. There's been absolutely no showing of bad faith, arbitrary or capricious behavior, discrimination. The complaint does not allege that notwithstanding the employer's stated discomfort with proceeding with the arbitration due to the pendency of litigation, that the union had some sort of duty to pursue the claim, or notwithstanding Mr. Holmes' expression that he didn't want to proceed with the arbitration, that there was a duty to pursue it. There just simply isn't a genuine issue of material fact as against – in support of the claims against SEIU. The district judge was correct in concluding that the union dutifully pursued the grievance to the point that would have been required of it and has represented Mr. Holmes adequately throughout this process. Okay. Thank you. Thank you. Mr. O'Leary, do you have any rebuttal? Thank you, Your Honor. Plaintiff has no rebuttal, nothing to add. Okay. Thank you very much. Thank you. Thank both sides. Holmes v. Tenderloin Housing Clinic now submitted for decision.  Do we have any recess?        Okay. Thank you. Is it, is there any discussion or discussion of a brief recess before doing the last two cases? Yes, of course. We will now be in recess for a short time.  A short time. All rise.
judges: Fletcher, Gould, Christen